**SO ORDERED.**

**SIGNED this 18 day of September, 2008.**

THIS ORDER HAS BEEN ENTERED ON THE DOCKET.
PLEASE SEE DOCKET FOR ENTRY DATE.

_____
Richard Stair Jr.
UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT FOR THE
EASTERN DISTRICT OF TENNESSEE

In re

WILLIAM HUBERT ELLIS SPURGEON

Debtor

Case No. 07-34063

**MEMORANDUM AND ORDER ON DEBTOR'S
APPLICATION TO EMPLOY CRIMINAL COUNSEL**

Before the court is the Application to Employ Criminal Counsel filed by the Debtor on September 16, 2008, requesting authorization to employ Ralph E. Harwell and Ralph E. Harwell, P.C., as special counsel to represent the Debtor in his defense of a criminal matter pending in the Catawba County General Court of Justice, Superior Division, Newton, North Carolina. Mr. Harwell's fee is $15,000.00 plus expenses, all of which is to be paid by the Debtor's estate. As set forth in the Employment Agreement between the Debtor and Mr. Harwell executed on September 12, 2008, the Debtor is charged with the offense of Obtaining Property by False Pretenses, consisting of "[p]resenting a check for the amount of $30,000.00 made payable to Genevieve K. Spurgeon,

drawn on USAA Federal Savings Bank." At the hearing on the Application to Employ Criminal Counsel held on September 18, 2008, the Debtor's counsel confirmed that the indictment returned against the Debtor was handed down on November 5, 2007, prior to the filing by the Debtor on November 27, 2007, of the Voluntary Petition commencing this Chapter 11 case, and that the Debtor intends to use estate funds to compensate Mr. Harwell.

In making a determination of whether to allow employment of criminal defense counsel, the following principles should be considered:

> First, employment of special counsel must be in the "best" interest of the estate. In determining whether the best interests are at stake, there must be an actual need for the services, based upon a threat to the estate or its property. The threat must be actual and real, not some hypothetical or speculative benefit which may or may not be realized. Criminal counsel must not be potentially in the estate's interest but reasonably and actually calculated to be in its best interest.
>
> Second, special counsel must be for the estate and not for the personal benefit of the debtor. The need for counsel must be for purposes of protecting the assets of the estate or furthering its interests. The propriety of employing counsel must be gauged by the needs of the estate and directly related to the trustee's or debtor-in-possession's performance of the duties and responsibilities imposed by the Bankruptcy Code. While this Court cannot say there may never arise circumstances in which special criminal counsel may be necessary, the debtor's general counsel appointed under 11 U.S.C. § 327(a) must be presumed generally able to advise against criminal transgressions for post-bankruptcy activity, which is the only concern of the estate, while criminal investigations and prosecutions for pre-filing activity are matters which concern only the debtor personally and are excluded from the section 362 automatic stay designed to protect the estate.
>
> Third, potential violations of the debtor's constitutional rights posed by criminal investigations or prosecutions occurring after the filing are of concern to the criminal forum, not the bankruptcy court. No violation of such rights by authorities charged with vindicating public interests through the criminal processes can give the debtor any greater interest in the private rights surrounding the estate being administered by a bankruptcy court.

*In re Duque*, 48 B.R. 965, 974-75 (S.D. Fla. 1984).

2

The *Duque* court arrived at the above principles through a thorough examination of the distinction between a debtor, as an individual, and as a debtor-in-possession. Upon the commencement of a Chapter 11 bankruptcy case, the former "continues in his original status, but upon filing the bankruptcy petition becomes subject to certain duties" such as giving up non-exempt property, filing statements and schedules and monthly operating reports, sharing in any remaining assets, and ultimately, receiving a personal discharge of all pre-petition liabilities, while the latter "marshalls the assets in existence at the time of the filing into the bankruptcy estate, uses available law to increase them further through a trustee's 'avoiding powers' . . . or through actions to recover preferences or fraudulent conveyances . . ., administers the business interests of the estate, and presumably distributes the assets to creditors through a plan of reorganization." *Duque*, 48 B.R. at 969. As a result of this separation of interests, "[t]he expense of preserving estate assets is borne by the estate[, while e]xpenses to serve some personal interest of the debtor are his." *Duque*, 48 B.R. at 969.

In addition, the court analogized a debtor's right to counsel in a criminal proceeding to the defense of a challenge to a debtor's discharge, finding that "the weight of authority . . . [is] that services rendered in preserving the debtor's discharge were for the purposes of exercising a personal privilege of the debtor rather than performing legal duties [and a]ttorneys' fees in defending such actions are not compensable from the estate." *Duque*, 48 B.R. at 970. Further noting that 11 U.S.C. § 362(b)(1) (West 2005) "specifically permits criminal proceedings notwithstanding filing of bankruptcy," the *Duque* court stated that "it is difficult to perceive how the bankruptcy estate would be affected by the criminal process, at least as a general proposition and absent unusual

3

circumstances where estate property may be at stake. If the Code purports to operate apart from and leave unfettered the criminal processes, the trustee's duties and estate's property are presumably unaffected, or at least are to be regarded as dichotomous." *Duque*, 48 B.R. at 973.

"A careful distinction must be made between those services which benefit the debtor personally and those which benefit the bankruptcy estate. . . . [As such, e]state assets may be used to further the above goals of the bankruptcy estate or debtor in possession, but not the individual debtor. Thus only those fees which benefit the estate or increase the assets of the estate may be compensable from the estate – not those fees which further personal interests of the individual[.]" *In re Engel*, 190 B.R. 206, 209 (Bankr. D.N.J. 1995) (citation omitted), *aff'd by Ferrera & Hartman v. Alvarez (In re Engel)*, 124 F.3d 567 (3d Cir. 1997). "The expense of [a debtor's] criminal defense arising out of pre-petition criminal activity, like the expense of preserving a debtor's discharge, is personal to [the debtor] and of no interest to creditors, or of any benefit to the estate." *Wootton v. Ravkind (In re Dixon)*, 143 B.R. 671 (Bankr. N.D. Tex. 1992). The overwhelming consensus of cases addressing this issue are in accord. *See In re French*, 139 B.R. 485 (Bankr. D.S.D. 1992); *In re Stoecker*, 114 B.R. 965 (Bankr. N.D. Ill. 1990); *In re Tashof*, 33 B.R. 225 (Bankr. D. Md. 1983); *but see United States v. Cassidy (In re Warner)*, 141 B.R. 762 (M.D. Fla. 1992) (determining that, under the circumstances presented, it was the best interest of the estate to appeal a large criminal judgment against the debtor).

For the reasons stated herein, the court has no alternative but to deny the Application to Employ Criminal Counsel. This does not, however, prohibit the Debtor from using non-estate funds

to hire and compensate Mr. Harwell to represent him. *See Roland v. Unum Life Ins. Co. of Am.*, 223 B.R. 499 (E.D. Va. 1998).

The Application to Employ Criminal Counsel filed by the Debtor on September 16, 2008, is DENIED.

###